IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TK ELEVATOR CORPORATION, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>WINDWARD TOWERS CONDOMINIUM )<br>OWNERS ASSOCIATION, INC. *et al.*, )<br>)<br>    Defendants. ) | Civil Action No. 1:23-cv-748 (RDA/IDD) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before this Court on Defendant Scottsdale Insurance Company's ("Scottsdale") Motion to Sever (Dkt. 17). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Scottsdale's Memorandum in Support of the Motion to Sever (Dkt. 18), Plaintiff TK Elevator Corporation's ("TKE") Opposition (Dkt. 21), and Scottsdale's Reply (Dkt. 24), this Court DENIES Scottsdale's Motion to Sever (Dkt. 17) for the reasons that follow.

### I. BACKGROUND

#### A. Factual Background

TKE alleges that Defendants Windward Towers Condominium Owners Association, Inc. ("Windward") and Scottsdale breached contracts with TKE and seeks compensatory damages and a declaratory judgment against each Defendant. Dkt. 1 ¶¶ 35, 42, 51, 58. TKE is a Georgia corporation that services and installs elevators, escalators, and moving walks. *Id.* ¶ 7. Windward is a Virginia corporation located in Newport News, Virginia. *Id.* ¶ 4. Scottsdale is an Ohio corporation licensed to issue insurance policies in Virginia. *Id.* ¶ 5.

1

This matter arises from a separate action in which TKE was a named Defendant. *Id.* ¶ 18. That separate action (*Douglass v. Thyssenkrupp Elevator Corp., et al.*, Case No. CL2004024T-01 (Cir. Ct. Newport News, Va.) (dismissed June 21, 2022)) (the "*Douglass* Action") arose from allegations by Leroy H. Douglass that Windward and TKE were liable for physical injuries Mr. Douglass suffered. *Id.* ¶ 19. Mr. Douglass asserted that he sustained injuries when he tripped and fell due to the placement of a board that was taped to the floor adjacent to an elevator that TKE was servicing at Windward's property in Newport News, Virginia. *Id.* Windward and Scottsdale eventually settled the case. *Id.* ¶ 22. Part of the settlement included a release for TKE of all claims asserted or that could have been asserted by Mr. Douglass against TKE. *Id.* TKE alleges that, despite the release, TKE still incurred legal costs in defending against the *Douglass* Action. *Id.* ¶ 23.

TKE alleges in this action that Windward and/or Scottsdale are responsible for indemnifying TKE for the legal costs that TKE incurred in defending the *Douglass* Action. *Id.* ¶¶ 35, 51. In Count One, TKE alleges that Windward entered a Service Agreement with TKE that requires Windward to indemnify TKE against suits that arise out of maintaining the equipment TKE agreed to service. *Id.* ¶¶ 11, 35. These costs allegedly include attorney's fees, court costs, and other costs of litigation. *Id.* ¶ 12. TKE claims that Windward has breached the Service Agreement by failing to pay TKE's legal fees. *Id.* ¶¶ 33, 35. TKE also argues that Windward further breached the Service Agreement if it did not add TKE as an additional insured party. *Id.* ¶ 34. Alternatively, in Count Three, TKE claims that the Service Agreement is an "insured contract" covered under Windward's insurance policy from Scottsdale, making Scottsdale liable to TKE as a third-party beneficiary of the policy. *Id.* ¶¶ 44, 46. In Counts Two and Four, TKE asks this

Court for declaratory judgments that TKE is entitled to recover from Windward and/or Scottsdale. *Id.* ¶¶ 42, 58.

### B. Procedural Background

On June 8, 2023, TKE filed a Complaint in this Court against Windward and Scottsdale. Dkt. 1. On July 28, 2023, Scottsdale filed the instant Motion to Sever the claims against Windward from the claims against Scottsdale, along with a Memorandum in Support of the Motion. Dkt. Nos. 17; 18. TKE filed its Opposition to the Motion to Sever on August 10, 2023. Dkt. 21. Scottsdale then filed a Reply on August 16, 2023. Dkt. 24. To date, Windward has not filed a brief with the Court regarding the Motion to Sever.

## II. STANDARD OF REVIEW

### A. Rule 20(a)(2)

Federal Rule of Civil Procedure 20(a)(2) provides that defendants may be joined in an action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Courts allow the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Rule 20 is "construed in light of its purpose, which 'is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citation omitted).

### B. Rule 21

Federal Rule of Civil Procedure 21 allows the Court to, "on motion or on its own, . . . add or drop a party. The Court may also sever any claim against a party." Fed. R. Civ. P. 21. The

3

"court has virtually unfettered discretion in determining whether or not severance is appropriate." *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 598 n.9 (E.D. Va. 2005). In applying this discretion, district courts within the Fourth Circuit consider the following eight factors:

> "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; . . . (4) whether the party requesting severance will be prejudiced if the claims are not severed[;] . . . (5) fundamental fairness[;] (6) judicial economy[;] (7) undue delay[;] and (8) the dual threat of duplicative litigation and inconsistent verdicts."

*Moulvi v. Safety Holdings, Inc.*, No. 3:20CV595, 2021 WL 4494191, at *6 (E.D. Va. Sept. 30, 2021) (quoting *RAI Strategic Holdings, Inc. v. Altria*, No. 1:20cv393, 2020 WL 6882646, at *2 (E.D. Va. Sept. 3, 2020) and *Laston v. Clarke*, No. 1:16cv447, 2016 WL 11642365, at *3 (E.D. Va. Oct 14, 2016)).

### III. ANALYSIS

Scottsdale argues that the Court must sever Count One and Two against Windward from Counts Three and Four against Scottsdale. Dkt. 18 at 5. Scottsdale asserts that the claims are distinct because they stem from two different contracts: (i) a Service Agreement between Windward and TKE; and (ii) an insurance policy between Windward and Scottsdale. *Id.* Scottsdale claims that evaluating the two contracts at the same time risks jury confusion. *Id.* Scottsdale also argues that trying all claims together would prejudice both Defendants because the jury would learn about potential liability insurance coverage. *Id.* According to Scottsdale, knowledge of an insurance policy could improperly influence the jury's decision. *Id.*, at 6. For the reasons discussed below, Scottsdale's Motion will be denied.

In considering the eight factors detailed in *Moulvi* for reviewing a motion to sever, the Court finds that the weight of the factors supports, at this time, maintaining all four claims in the

current action. First, while the claims stem from different contracts, the core of the issue in dispute is which party should bear the costs of TKE's legal defense in the *Douglass* Action. Simply put, the claims are not "significantly different from one another." *Moulvi*, 2021 WL 4494191, at *6. The claims all arise out of the same "occurrence" and have common questions of fact in issue. Fed. R. Civ. P. 20(a)(2). Each claim seeks recovery for the costs TKE incurred in the *Douglass* Action. The Court could resolve all claims in determining that Windward, Scottsdale, or neither is responsible for TKE's costs. Thus, the claims are sufficiently similar to be heard together before this Court.

Second, the witnesses and documentary proof are likely to overlap between the four claims because the claims stem from the same underlying action. This is a case-by-case determination based on the facts of the dispute. *See, e.g.*, *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 490 (D. Md. 2007) (declining to separate 300 similar claims on a motion to sever). Here, witnesses or documents that establish TKE's costs from the *Douglass* Action are likely the same for either claim. There may also be overlap in witnesses from Windward who can testify as to both the Service Agreement and the insurance policy. Some witnesses or documents may only be relevant to a particular claim; however, universal commonality is not required to maintain separate claims in the same action. *See id.* (finding some differentiation in witnesses did not support severance). There is sufficient commonality in the witnesses and documentary proof required to support joinder.[1]

---

[1] In its original Memorandum in Support and in its Reply, Scottsdale recognizes this as one of the factors to be considered. Dkt. Nos. 18 at 4; 24 at 2. Moreover, in its Opposition, TKE affirmatively argued that the witnesses and documents with respect to each claim would overlap. Dkt. 21 at 5. Nonetheless, Scottsdale failed to address this argument in either its Memorandum in Support or its Reply and does not argue that the claims are so distinct such that there would be no overlap in witnesses or documentary evidence.

The third *Moulvi* factor, prejudice to the party opposing severance, also disfavors severance. If the Court were to grant the Motion, TKE would have to pursue the claims in two different trials, with the attendant preparation and expense involved. This could include multiple depositions of the same witnesses for the different claims and adhering to two separate court calendars. *See RAI Strategic Holdings, Inc.*, 2020 WL 6882646, at *6 (discussing potential prejudice from separating claims by creating two trials). The eighth *Moulvi* factor is also implicated here, as litigating two trials based on the same underlying facts could be duplicative or lead to conflicting judgments. *Moulvi*, 2021 WL 4494191, at *31. Witnesses may be called to testify twice, or the Court may be forced to re-adjudicate issues of fact that it has already resolved once in the other case. Dkt. 21 at 8-9. Thus, both the third and eighth factors weigh against severance.

Scottsdale's arguments focus on the fourth *Moulvi* factor: prejudice to the moving party if the Court does not sever the claims. Dkt. 18 at 5. Scottsdale argues that the disclosure of Windward's liability insurance is so prejudicial that it cannot be considered in reviewing claims one and two of the Complaint. *Id.* at 1. Virginia law traditionally eschews mention of insurance when determining liability; however, the Virginia courts have loosened this prohibition when the potential prejudice can be overcome. *Compare* Va. Code § 8.01-5 (B) ("Nothing in this section shall be construed to permit the joinder of any insurance company on account of the issuance to any party to a cause of any policy or contract of liability insurance . . . .") *with Medina v. Hegerberg*, 245 Va. 210, 213 (1993) (holding that "when sufficient cautionary instructions are made by the court following a mention of insurance, we generally will not hold comments

regarding insurance coverage to be reversible error").[2] This District has observed that "the mention of insurance coverage in a negligence suit is no longer reversible error in Virginia" and "there are occasions on which evidence regarding insurance will not constitute reversible error." *Hanna v. Gravett*, 262 F. Supp. 2d 643, 647 n. 4 (E.D. Va. 2003) (citation omitted).

Although there is some risk of prejudice from the disclosure of insurance coverage, that risk is slight and not dispositive in this Court's analysis. Part of the dispute between TKE and Windward is whether Windward added TKE as an insured party in accordance with the Service Agreement allegedly entered by TKE and Windward. Dkt. 1 ¶ 14. Thus, evidence regarding insurance coverage is likely to be before the jury with respect to all counts of the Complaint.[3] Other courts have denied severance on similar facts. *See, e.g., Grano v. Sodexo Management, Inc.*, No. 3:18-cv-01818-GPC-BLM, 2020 WL 2111898 at *8 (S.D. Cal. May 4, 2020) (denying severance of cross claims based on a separate contract when the dispute was based on the same occurrence); *Hartford Fire Ins. Co. v. County Asphalt, Inc.*, No. 01Civ.6176(AGS)(GWG), 2002 WL 31654853 at *4 (S.D.N.Y. Nov. 21, 2002) (denying severance of an insurance company when one of the claims implicated whether insurance was procured). Moreover, the Federal Rules of Evidence generally allow for admissibility of liability insurance when it is offered for a purpose other than "to prove whether [a party] acted negligently or otherwise wrongfully." Fed. R. Evid. 411. As a result, the risk of additional prejudice to the Defendants from the disclosure of an insurance relationship is low and does not outweigh the other factors that weigh against severance.

---

[2] Although Virginia court decisions are not binding on this Court, the way Virginia courts treat insurance claims is persuasive in the analysis of prejudice to the Defendants.

[3] The Court does not, at this stage, determine that the introduction of any such evidence would be appropriate or permissible.

TKE also argues that, even if Windward failed to add TKE as an insured party under Windward's policy with Scottsdale, TKE can still recover from Scottsdale as a third-party beneficiary under the insurance policy because the Service Agreement is an "insured contract." Dkt. Nos. 1 ¶ 44; 21 at 2. This claim implicates all three parties: TKE and Windward as alleged parties to the insured contract, and Scottsdale as the alleged insurer of that contract. Resolution of TKE's claims against Scottsdale may still require Windward's involvement in the action, regardless of the disposition of claims one and two against Windward. And, as the risk of additional prejudice to Windward on Counts One and Two is low, the fourth *Moulvi* factor weighs only slightly in favor of severance.

The fifth *Moulvi* factor, fundamental fairness, does not favor severance because the mention of insurance coverage is insufficient to justify severing the claims. *Medina*, 245 Va. at 213. Scottsdale argues that trying the cases together could result in jury confusion, leading to unfairness. In *Moulvi*, U.S. District Court Judge Hannah Lauck discussed the issue of jury confusion, finding that a dispute with one plaintiff, two defendants, and four claims did not risk jury confusion. *Moulvi*, 2021 WL 4494191, at *26. Indeed, Judge Lauck observed that jury confusion may be more likely if severance was granted because a jury would only hear part of the story due to the absence of a defendant. *Id.* at *26-27. Here, the dispute similarly involves one plaintiff, two defendants, and four claims, and there is unlikely to be juror confusion. Part of the contractual dispute between TKE and Windward involves whether Windward procured insurance for TKE. Thus, limiting discussion of that dispute via severance would mean the jury only hears part of the story and risks jury confusion. Indeed, TKE argues that it would be fundamentally unfair to require TKE to litigate twice for the same result. Denying severance in this case is not fundamentally unfair to either party, particularly given the preference of both the U.S. Supreme

Court and the Fourth Circuit for joinder and efficiency. *United Mine Workers v. Gibbs*, 383 U.S. at 724; *Saval*, 710 F.2d at 1031.

The sixth factor, judicial economy, clearly favors denying severance. Severing these claims would presumably result in two trials and potentially double the use of judicial resources to adjudicate responsibility for the same underlying expenses incurred by TKE. This Court has already observed that all of the claims at issue here arise from the same *Douglass* Action and that similar fact finding will be required to adjudicate each claim. Judicial economy alone is insufficient to justify trying claims together that otherwise ought to be tried separately; however, that is not the case in the instant matter. Here, "denying the motion to sever will serve judicial economy and promote the just, speedy and inexpensive determination of this action." *Carbon Fuel Co. v. USX Corp.*, 867 F. Supp. 414, 419 (S.D. W. Va. 1994) (citing *Jonas v. Conrath*, 149 F.R.D. 520, 524 (S.D. W. Va. 1993)).

The seventh factor, undue delay, does not clearly favor or disfavor severance, except as far as it relates to judicial economy. The parties are still relatively early in the litigation process and have yet to complete discovery. There is, however, the potential for delay in resolving all claims if they are litigated in separate trials, with the need to conduct potentially duplicative discovery in each. Thus, at best for Scottdale's position, this factor is neutral.

In sum, the weight of the *Moulvi* factors counsel in favor of denying the Motion to Sever. The risk of prejudice to the Defendants is low due the nature of the claims alleged, and based on considerations of fundamental fairness, judicial economy, the threat of duplicative litigation, and the potential prejudice to TKE, the Motion to Sever will be denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant Scottsdale's Motion to Sever (Dkt. 17) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
February 21, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge